Misc. Docket No. 2021-0114

# United States Court of Appeals
# for the Federal Circuit

---

IN RE SK HYNIX INC., SK HYNIX AMERICA INC.

*Petitioner.*

---

*On Petition for a Writ of Mandamus to the*
*U.S. District Court for the Western District of Texas in*
*Case No. 6:20-cv-0194-ADA, District Judge Alan D. Albright*

---

## RESPONSE TO PETITION FOR MANDAMUS
## WITH SUPPLEMENTAL APPENDIX IN SUPPORT

James M. Wodarski
jwodarski@mintz.com
Andrew H. DeVoogd
dhdevoogd@mintz.com
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel. (617) 542.6000
Fax (617) 542.2241

*Counsel for Respondent Netlist, Inc.*

February 16, 2021

---

i

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ....................................................vi

INTRODUCTION ......................................................................1

COUNTERSTATEMENT OF THE ISSUES PRESENTED.....................................3

COUNTERSTATEMENT OF FACTS .........................................................4

    A.    Background on the Parties.........................................................4

    B.    The Extinguished CDCA Claims ......................................5

        **1.**    The First California Case .........................................5

        **2.**    The Second California Case.......................................7

    C.    SK hynix Has a Relevant and Commercially Significant Presence in the WDTX.............................................8

REASONS WHY THIS WRIT SHOULD NOT ISSUE.........................................9

    I.    The District Court's Reasoned Assessment Is Entitled to Deference....................................................9

    II.    The District Court Correctly Concluded That Patent Venue Rules Prevent Transfer ..........................................10

    III.    The District Court's Determination That No First-To-File Factor Supported Transfer Was A Sound Exercise of Discretion.................13

    A.    No overlap exists because no claims will be litigated in the CDCA ...........................................................14

    B.    No opportunity for conflict exists, as the Texas district court is the only court that will address the subject matter of the parties' dispute............................................................16

    C.    The district court properly identified advantages to trying the case in Texas ................................................19

    IV.    Transfer Is Not Warranted Under 28 U.S.C. §1404(a) .......................20

    A.    This Case Could Not Have Been Filed in CDCA, Ending the Analysis............................................................20

    B.    The Private Interest Factors Do Not Demonstrate That CDCA Is A "Clearly More Convenient" Forum.................................22

1.  Private Factor One: The district court properly found that "Access to sources of evidence" does not weigh in favor of transfer .................................................................22

2.  Private Factor Two: The district court did not abuse its discretion in finding that the "availability of compulsory process" does not weigh in favor of transfer ...........................24

3.  Private Factor Three: The district court did not abuse its discretion in concluding that "witness convenience" does not weigh in favor of transfer...................................................27

4.  Private Factor Four: The district court did not abuse its discretion in finding that "practical problems" and "judicial economy" do not weigh in favor of transfer ..............29

C.  The Public Interest Factors Do Not Demonstrate That CDCA Is A "Clearly More Convenient" Forum .................................................29

1.  Public Factor One: The "local interest" factor does not weigh in favor of transfer...........................................................29

2.  Public Factor Two: The district court also did not abuse its discretion in holding that "court congestion" does not weigh in favor of transfer...........................................................31

3.  Public Factor Three: The "familiarity of the forum with the governing law" is irrelevant ...............................................32

CONCLUSION .................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599, 603-04 (5th Cir. 1999) ................................................................18

*Capella Photonics, Inc. v. Infinera Corp., et al.*,
   Civ. No. 2:20-cv-00077, 2021 U.S. Dist. LEXIS 25998
   (E.D. Tex. Feb. 10, 2021) ...............................................................................12

*Casey v. Reliance Tr. Co.*,
   No. 4:18-CV-00424, 2018 U.S. Dist. LEXIS 219439
   (E.D. Tex. Dec. 12, 2018)................................................................................26

*Dataquill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410,
   (W.D. Tex. June 13, 2014)...............................................................................30

*Electronics for Imaging, Inc. v. Coyle*,
   394 F.3d 1341, 1347 (Fed. Cir. 2005) .............................................................18

*EROAD Ltd. v. PerDiemCo LLC*,
   No. 6:19-CV-00026-ADA (W.D. Tex. Sept. 19, 2019) .....................................31

*Ex Parte Fahey*,
   332 U.S. 258 (1947)............................................................................................9

*Global Equity Management (SA) Pty. Ltd. v. Ericsson, Inc.*,
   No. 2:16-cv-00618-RWS-RSP, 2017 U.S. Dist. LEXIS 9971
   (E.D. Tex. Jan. 24, 2017)..................................................................................18

*Humble Oil & Ref. Co. v. Bell Marine Serv.*,
   321 F.2d 53 (5th Cir. 1963) ..............................................................................20

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ........................................................................23

*In re Apple Inc.*,
   456 F. App'x 907 (Fed. Cir. 2012) ..............................................................12, 30

iii

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) .......................................................26

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .............................................20, 21, 30

*In re Barnes & Noble, Inc.*,
   743 F.3d 1381 (Fed. Cir. 2014) .......................................................26

*In re Echostar Corp.*,
   388 F. App'x 994 (Fed. Cir. 2010) .......................................................9

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .......................................................28, 31

*In re Intel Corp.*,
   2021 U.S. App. LEXIS 1691 (Fed. Cir. Jan. 21, 2021) .......................................9

*In re Intel Corporation*,
   Case No. 2021-0111 (Fed. Cir. Jan. 21, 2021) .............................20, 24

*In re Telebrands Corp.*,
   824 F.3d 982 .......................................................13, 19

*In re Vistaprint Ltd.*,
   628 F.3d 1342, (Fed. Cir. 2010) .......................................................10

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .......................................................20

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952) .......................................................10, 11

*Leach v. Day To Day Imports, Inc.*,
   No. 2:17-07351, ECF No. 50 (C.D. Cal. Nov. 14, 2017) .......................................21

*Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*,
   629 F. Supp. 2d 759 (S.D. Tex. 2009) .......................................................27

*Parkervision, Inc. v. Intel Corp.*,
   No. 6:20-cv-00108-ADA, 2021 U.S. Dist. LEXIS 24588
   (W.D. Tex. Jan. 26, 2021) .......................................................22

*Parsons v. Chesapeake & Ohio Ry. Co.*,
  375 U.S. 71 (1963) ....................................................................................31

*Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*,
  933 F.3d 1367 (Fed. Cir. 2019) ..............................................................13

*Save Power Limited. v. Syntek Financial Corporation*,
  121 F.3d 947 (5th Cir. 1997) ...........................................13, 14, 15, 16

*Smartflash LLC v. Apple, Inc.*,
  No. 6:13-cv-447, 2014 U.S. Dist. LEXIS 185268
  (E.D. Tex. Apr. 4, 2014) ..........................................................................28

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ....................................................................*passim*

*XY, LLC v. Trans Ova Genetics, LC*,
  No. W-16-CA-00447-RP, 2017 WL 5505340
  (W.D. Tex. Apr. 5, 2017) .........................................................................21

## Statutes and Rules

28 U.S.C. §1400 ....................................................................................11, 12

28 U.S.C. §1404(a) ...........................................................................*passim*

## STATEMENT OF RELATED CASES

1. *Netlist, Inc. v. SK hynix Inc.*, Civil Action No. 6:20-cv-00525 (W.D. Tex.)

2. *Netlist, Inc. v. SK hynix Inc.*, Case No. 8:16-cv-01605 (C.D. Cal.)

3. *Netlist, Inc. v. SK hynix Inc.*, Case No. 8:17-cv-01030 (C.D. Cal.)

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Respondent, Andrew H. DeVoogd, certifies the following:

1.     The full name of every party or amicus represented by me is:

Netlist, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Netlist, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Matthew Galica, Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.

Eric Hansen, McKool Smith

John Garvish, McKool Smith

5.     Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

*Netlist, Inc. v. SK hynix Inc.*, Civ. No. 6:20-cv-00525 (W.D. Tex.)

*Netlist, Inc. v. SK hynix Inc.*, Case No. 8:16-cv-01605 (C.D. Cal.)

*Netlist, Inc. v. SK hynix Inc.*, Case No. 8:17-cv-01030 (C.D. Cal.)

6.     All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

     None.

Dated: February 16, 2021          Respectfully submitted,

          /s/ *Andrew H. DeVoogd*
          Andrew H. DeVoogd
          *Attorney for Respondent Netlist, Inc.*

Pursuant to the Court's Order, dated February 9, 2021, Respondent Netlist, Inc. submits this Response to SK Hynix Inc. and SK Hynix America Inc.'s ("SK hynix" or "Petitioners") petition for writ of mandamus.

## INTRODUCTION

The district court's proper application of the post-*TC Heartland* patent venue rule disposes of Petitioners' request for transfer, on all grounds. SK hynix argued below that venue was available in the Central District of California ("CDCA") because Netlist could have sought leave to amend in that forum. That argument necessarily concedes that Netlist could not have filed in CDCA as a matter of right. The outcome would also have hinged on whether SK hynix consented to jurisdiction or challenged venue.

Now, in its petition to this Court, SK hynix shifts to new arguments. First, it argues that SK hynix, Inc., a foreign entity, is amenable to suit in CDCA, necessarily conceding that the domestic defendant, SK hynix America, Inc., is not. Binding Supreme Court precedent, however, requires that where claims could only be brought against every relevant defendant in one of two district courts, the forum in which each defendant is amenable to suit is the proper venue. This Court should affirm the lower court's legally correct application of the patent venue rules and, on that basis alone, deny the Petition.

The district court went further, however, and performed a full and reasoned analysis of factors relevant to the applicable first-to-file standard and the section 1404(a) convenience test. Both analyses confirmed that transfer is not warranted. Both were based on a thorough consideration of the relevant facts and circumstances. There was no abuse of discretion, and this Court should defer to the district court's findings and conclusion.

Concerning the first-to-file analysis, the simple reality is that no case exists in CDCA any longer. It has been that way for years, and that will not change. All of Netlist's asserted patent claims have been extinguished, and the CDCA lacks subject matter jurisdiction to do anything with them. While SK hynix has RAND counterclaims nominally filed there, it has already shown that it will never advance them in the absence of co-pending patent infringement claims. All that is left to do is dismiss the CDCA cases. Accordingly, the same common sense principles that underlie the Fifth Circuit's substantial overlap analysis dictate denial of the transfer request. The simple truth is that only one district court is presently overseeing the party's dispute—and that is the Western District of Texas ("WDTX.") There is no possibility for duplication of effort, nor is there any opportunity for inconsistent decisions or outcomes coming from different courts. The factual predicate for the application of the Fifth Circuit's first-to-file rule does not exist here.

Concerning section 1404(a), all of the relevant factors support the district court's determination that the WDTX is a more convenient venue for the parties' dispute. The WDTX is a focal point of the memory product market and thus an intersection of both parties' significant commercial interest in that market. To date, none of the proceedings have raised any need for compulsory process, and there is no reason to anticipate that such a need will arise in the present litigation. SK hynix's witnesses, consistent with past experience, will come from Korea, and the lower court properly found that the WDTX is as convenient for those witnesses as the CDCA. Similarly, with respect to access to sources of proof, the parties have already exchanged well over four million pages of documents—all in electronic format, and all fully available in Texas under a cross-use agreement.

The district court's ruling is well supported and entitled to deference. Under these facts, it is not possible to conclude that the CDCA would be a clearly more convenient forum. The district court got it right. Mandamus is not warranted, and the Petition should be denied.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

Whether there was no clear abuse of discretion by the district court in determining that the patent venue rules compelled denial of the request to transfer.

Whether there was no clear abuse of discretion by the district court in determining that the first-to-file rule was inapplicable, and did not require transfer.

3

Whether there was no clear abuse of discretion by the district court in finding that, upon a consideration of the relevant factors, the requested transferee venue is not a clearly more convenient forum for the parties' dispute.

## COUNTERSTATEMENT OF FACTS

### A.    Background on the Parties

For over 20 years, Netlist has innovated in the memory module space, including developing disruptive and foundational technology adopted in certain industry standards. Like many memory module companies, including Petitioners, among Netlist's largest customers are computer makers based in Texas, such as Dell Technologies. APPX0943-944; APPX0688-689. In fact, the technology-focused economy of WDTX has been, and remains, an important piece of Netlist's business. APPX0688-689. For example, from mid-2019 to mid-2020, Netlist personnel spent at least 32 days in the WDTX maintaining and developing the company's business contacts and relationships in the area. APPX0688-689.

Netlist filed a complaint against SK hynix in the WDTX on March 17, 2020, alleging infringement of Netlist's standard-essential patents ("SEPs") by SK hynix's RDIMM and LRDIMM memory modules. APPX0027-42; APPX0647-648. In that complaint, Netlist asserted two patents: U.S. Patent Nos. 9,858,218 (the "'218

patent") and 10,474,595 (the "'595 patent").[1] APPX0648. Petitioners waited almost two months to file a motion to transfer the case to CDCA. APPX0074-97; APPX0648.

## B. The Extinguished CDCA Claims

Previously, Netlist sued SK hynix in CDCA in two cases before Judge Josephine L. Staton. At the time Netlist filed its case in WDTX in May of 2020, none of the previously-asserted patent claims remained alive in CDCA. The Patent Trial and Appeal Board ("PTAB") had found that all of the claims previously asserted in the first CDCA action were unpatentable, and all appellate rights with respect to that decision were exhausted. APPX0648-649. The PTAB had likewise issued a final written decision finding that all of the claims previously asserted in the second CDCA action were unpatentable. APPX0649.

### 1. The First California Case

In the first California case (No. 8:16-CV-01605)("*California I*"), Netlist accused SK hynix of infringing six patents, alleging infringement of, among others, claims 1-3, 5 and 6 of the '837 Patent. APPX0648. SK hynix counterclaimed asking for a determination of RAND terms to license Netlist's SEPs. Pet. at 7. In its July

---

[1] The '595 patent is a continuation of the '218 patent. APPX0648. Both the '218 and '595 patents are continuations of another Netlist patent, U.S. Patent No. 9,535,623 (the "'623 patent"), and each of the '623, '218, and '595 patents are continuations of Netlist's U.S. Patent No. 8,439,837 (the "'837 patent"). APPX0648.

2017 motion to stay the infringement claims, SK hynix told Judge Staton that *California I* was "in the early stages of litigation," because the court had "not issued any substantive rulings on the merits of the case" and the parties had "engaged in little discovery specific to" that case. APPX0664-687 at 671-672. SK hynix also emphasized that its "counterclaims and Netlist's infringement claims involve different facts, witnesses, and evidence, as well as different legal issues." *Id*. at APPX0681.

At SK hynix's request, in 2017 Judge Staton stayed the infringement claims in *California I*. APPX0333-342. As SK hynix admits, until then Judge Staton had done no more than (1) enter typical discovery and protective orders, (2) disqualify Netlist's original counsel, and (3) strike certain extrinsic *Markman* evidence on procedural grounds. APPX0664-687; Pet. at 7-8.

SK Hynix petitioned for *inter partes* review of all of the asserted claims in *California I*, and the PTAB determined that all of the asserted claim were unpatentable. With respect to the '837 patent, in IPR2017-00548, the PTAB issued a final written decision on May 3, 2018 holding that asserted claims of the '837 Patent were unpatentable.[2] APPX0382-384. Netlist did not appeal that decision.

---

[2] All of the other patent claims asserted in *California I* met a similar outcome. In IPR2017-00549, the PTAB found that the asserted claims of the '364 Patent were unpatentable. IPR2017-00549, Paper No. 30 (May 3, 2018). In IPR2017-00577, the PTAB found that the asserted claims of the '185 Patent were unpatentable. IPR2017-

APPX0649. As to the other patents asserted in *California I*, all appeals from the PTAB decisions have been exhausted. In the only appeals taken from those decisions, this Court in 2019 affirmed the holdings in IPR2017-00561, IPR2017-00562, and IPR2017-00560. *See* CAFC Nos. 2018-2123 Dkt. No. 69, 2018-2357 Dkt. No. 62, 2018-2358 Dkt. No. 6 (Dec. 12, 2019).

## 2.    The Second California Case

In the second California case (No. 8:17-CV-01030)("*California II*"), filed on June 14, 2017, Netlist accused SK hynix of infringing two patents, including claims 1-29 of the '623 patent.[3] APPX0303-309. In response, SK hynix advanced RAND counterclaims. Pet. at 10; APPX0345-0346; APPX0348-0349. On the parties' joint request, Judge Staton consolidated *California I* with *California II*, and later stayed the consolidated cases on February 2, 2018. Pet. at 10; APPX0367; APPX0380. They have remained dormant since that date.

SK hynix also petitioned for *inter partes* review of all asserted claims in *California II*, and the PTAB determined that each patent claim was unpatentable.

---

00577, Paper No. 26 (Jul. 5, 2018). In IPR2017-00561, the PTAB found that the asserted claims of the '434 Patent were unpatentable. IPR2017-00561, Paper No. 36 (Jul. 5, 2018). In IPR2017-00562, the PTAB found that the asserted claim of the '501 Patent was unpatentable. IPR2017-00562, Paper No. 36 (Jul. 5, 2018). In IPR2017-00560, the PTAB found that the asserted claim of the '064 Patent was unpatentable. IPR2017-00560, Paper No. 30 (May 3, 2018).

[3] Netlist also asserted claims of U.S. Patent No. 9,606,907, as to which the PTAB later found were unpatentable. IPR2018-00362, Paper No. 29 (Jun. 27, 2019).

For example, the PTAB issued a final written decision on March 21, 2019 holding that claims 1-29 of the '623 Patent were unpatentable. APPX0387-390. All appeals of IPRs stemming from *California II* have been exhausted. In 2019, this Court granted Netlist's unopposed motion to dismiss cross appeals concerning IPR2018-00362. CAFC No. 2019-2341, Dkt. No. 4 (Jul. 15, 2019). On June 25, 2020, this Court also dismissed the appeal of IPR2018-00303 based on the Parties' agreement. CAFC No. 2019-1920, Dkt. No. 45 (Jun. 25, 2020).[4] No appealable issues remain.

## C.    SK hynix Has a Relevant and Commercially Significant Presence in the WDTX

As SK hynix admits, it maintains an Austin, Texas facility with nine employees. APPX0943-944. These employees reside and work in WDTX specifically to provide commercial sales and technical assistance to customers. APPX0943-944; APPX0097-98. These employees' sales and technical work is directly related to the DDR4 RDIMM and LRDIMM products that Netlist accuses of infringement. *Id*. Notably, SK hynix's admitted "customers in the Austin area" include Dell Technologies, among the largest purchasers of the accused LRDIMM and RDIMM memory modules in the United States. APPX0943-944.

---

[4] The district court incorrectly indicated that the appeal related to the '623 patent was "still pending" as of its order of February 2, 2021. APPX0649. As addressed in detail below, this immaterial error carries no significance.

Also due to the Austin area's significance in the commercial memory market, Netlist personnel frequently travel to the WDTX to maintain and develop its own business relationships with significant customers located there. APPX0688-0689. In the year preceding SK hynix's transfer motion, for example, ten Netlist personnel traveled to WDTX ten different times, staying at least 32 days. *See id*. In addition, Netlist's Executive Vice President for Sales resides in Texas. APPX1001.

## REASONS WHY THIS WRIT SHOULD NOT ISSUE

### I.    The District Court's Reasoned Assessment Is Entitled to Deference

The Petition is reviewed under the exacting abuse of discretion standard of review, which properly defers to the district court's reasoned assessment in adjudicating the transfer request. *In re Echostar Corp.*, 388 F. App'x 994, 994-95 (Fed. Cir. 2010) ("mandamus may be used to correct a patently erroneous denial of transfer" which is an "exacting" standard, "requiring the petitioner to establish that the district court's decision amounted to a failure to meaningfully consider the merits of the transfer motion") (citations omitted). Issuance of a writ of mandamus is a "drastic" remedy that is reserved only for truly extraordinary cases. *Ex Parte Fahey*, 332 U.S. 258, 259-60 (1947). Absent a patently erroneous result, this Court will not "second guess" the lower court's transfer ruling. *In re Intel Corp.*, 2021 U.S. App. LEXIS 1691, *5 (Fed. Cir. Jan. 21, 2021).

In fact, this Court need only find "*plausible support* in the record" for the district court's determination. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) (emphasis added). That is certainly the case here.

## II.    The District Court Correctly Concluded That Patent Venue Rules Prevent Transfer

The district court properly concluded that, under *TC Heartland*, the present action could not have been filed in the Central District of California. APPX0651 (referencing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017)). That alone justified denial of the transfer motion, on first-to-file or section 1404(a) grounds. *Id.* The district court nonetheless performed a first-to-file assessment and determination based on undisputed facts, which compelled the court's conclusion. Similarly, though the unchallenged venue determination rendered further analysis unnecessary, the court properly found that a balancing of the relevant facts and circumstances fell far short of establishing that the CDCA was clearly a more convenient venue. The mandamus request should be denied.

SK hynix does not dispute that, under the holding of *TC Heartland*, the CDCA was not an available venue for the present action. SK hynix suggests that this fact is irrelevant to its first-to-file arguments, and should have been ignored by the district court, because "questions of venue simply do not arise" in the context of the "first-to-file rule." Pet. at 26-27. But that is not right. Questions of venue arose in *Kerotest*, where the Supreme Court offered its seminal discussion of the first-to-file rule in the

context of two competing patent infringement actions. *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 184-186 (1952). And the Supreme Court there affirmed the holding that, when the claims at issue could only be brought against every relevant defendant in one of two competing fora, the forum in which venue was proper for every defendant was the one in which the case should proceed. *Id*. *Kerotest* thus confirms that the first-to-file rule gives regard to the "comprehensive disposition of litigation" with respect to whether and where patent claims may be brought against every defendant. *Id*. Just so here. The district court followed the law, and certainly did not abuse its discretion, in declining to "extend the first-to-file rule to trump the venue requirements that the Supreme Court clearly set forth in *TC Heartland*." APPX0651.

Rather than argue that venue would have been proper in the CDCA under *TC Heartland* and 28 U.S.C. §1400, SK hynix argued to the district court that Netlist might have filed the present action in the CDCA through motion practice and leave of the court. APPX0469. As Netlist pointed out at the motion hearing, it would not only have required leave of court, but would also have subjected Netlist to SK hynix's position on whether it consented to jurisdiction. APPX0977-978, at 10:21 to 11:2. Of course, where motion practice is required, there is no ability to file as of right. *Id*. at 10:18-20. It is certainly proper, as the district court found, for Netlist to file its claims in a venue that is available under the applicable patent venue rules,

rather than to proceed by motion practice in another court and expose itself to the potential for, among other things, the assertion of an improper venue defense.

The Petition further argues that SK hynix, as a foreign entity, is not subject the *TC Heartland* venue requirements. Pet. at 27. This does nothing to identify an error in the lower court's ruling. *See, e.g.*, *In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) ("if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus") (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). The other named defendant, SK hynix America, Inc., is subject to those venue restrictions, and therefore could not be sued in CDCA under *TC Heartland*. SK hynix does not dispute that. Nor could it. Venue was not proper in CDCA, ending the analysis. *See, e.g.*, *Capella Photonics, Inc. v. Infinera Corp., et al.*, Civ. No. 2:20-cv-00077, 2021 U.S. Dist. LEXIS 25998, *16 (E.D. Tex. Feb. 10, 2021) (denying motion to transfer where transferee venue not proper as to all named defendants, even with "prior consent to suit" in that venue).

The Petition also argues that the *California II* case was filed after *TC Heartland*, but the circumstances then were different for at least two reasons. First, the Supreme Court issued its *TC Heartland* decision on May 22, 2017, only three weeks before Netlist filed its complaint in June of 2017—and it was not yet clear what might satisfy the "regular and established place of business" requirement for

purposes of 28 U.S.C. §1400 in view of that new decision. Second, when the *California II* complaint was filed, Netlist had active patent infringement claims pending in that court. By the time the present action was filed, those claims were extinguished, thus eliminating the CDCA's subject matter jurisdiction over them. *See, e.g.*, *Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367 (Fed. Cir. 2019) (vacating district court's judgment concerning disclaimed claims, for no case or controversy existed at the time of judgment). In any event, whether or not the *California II* case was properly filed in the CDCA under *TC Heartland* has no bearing on whether the present case would have been properly filed there.

Again, there is no dispute: venue was improper in CDCA.

## III.    The District Court's Determination That No First-To-File Factor Supported Transfer Was A Sound Exercise of Discretion

The lower court also correctly determined that, even if the patent venue rule were not dispositive, the first-to-file rule still would not apply based upon a consideration of undisputed facts. SK hynix concedes, as it must, that Netlist no longer has any actionable claims filed in the CDCA. Pet. at 22-23. It is impossible, therefore, for the California actions to be identical, or nearly identical, to the Texas Action for the simple reason that no extant patent infringement claims exist there.

Accordingly, the lower court's first-to-file determination was warranted and is thus entitled to deference. *See, e.g., In re Telebrands Corp.*, 824 F.3d 982, WL 11588057, at *2 (Fed. Cir. 2016) (where complete or near complete overlap is

absent, this Court "generally defers to the district court's reasoned assessment"). In fact, where, as here, substantial overlap is missing, the district court has "considerably more discretion." *Save Power Limited. v. Syntek Financial Corporation*, 121 F.3d 947, 951 (5th Cir. 1997). The case-by-case analysis centers on three factors: extent of overlap; the likelihood of conflict; and each forum's comparative advantage and interest in resolving the dispute. *Id*. The district court correctly found that all of these factors weigh against transfer. APPX0652-654.

### A. No overlap exists because no claims will be litigated in the CDCA

There can be no material overlap between the Texas action and the California actions because the Texas district court is the only court that will address and adjudicate Netlist's patent infringement claims. It is the only court where such claims are actually pending. It is also undisputed that the present action involves different patents, which were never asserted in California. APPX0651-652. The patents are from the same family—but that fact does not establish overlap. APPX0652 (collecting cases). The presently asserted claims will require new claim constructions and infringement positions, as the lower court correctly noted. APPX0651-652. SK hynix does not contest that point. Yet, the Petition argues that the lower court nonetheless abused its discretion by failing to recognize the fact that SK hynix's RAND counterclaims are still pending in California, and create a

meaningful overlap with the Texas action. APPX0652-653. The district court considered and properly rejected that argument. *Id*.

In reality, SK hynix will never seek to litigate its RAND counterclaims in California now that none of Netlist's patent infringement claims there still exits. The lower court recognized this, and voiced a concern that SK hynix has maintained the RAND counterclaims solely for the benefit of its transfer request. APPX0652. The district court is right. SK hynix has had three years to advance its RAND counterclaims but did not. Rather, it focused solely on non-infringement defenses and efforts to invalidate the asserted patent claims. It is apparent that the RAND counterclaims were necessarily linked to Netlist's patent infringement claims, and SK hynix would only seek to litigate the counterclaims in the event that Netlist prevailed on a valid and infringed patent claim. For that reason, despite being repeatedly pressed to do so during the motion hearing, SK hynix refused to explain how it would go about advancing those RAND counterclaims in California when there are no longer any asserted patents upon which to perform an essentiality analysis. APPX0975 at 8:23-25; APPX0985 at 18:3-7; APPX0987 at 20:23-25.

If SK hynix had a real interest in pursuing its RAND counterclaims in the CDCA, it could have asked that court to determine whether the existence of the RAND counterclaims alone—and in the absence of any co-pending patent infringement claims—created a substantial overlap with Texas action. *See Save*

*Power Ltd.*, 121 F.3d at 948 (noting that as a general rule, a transfer request may be made to the district court where claims were first filed). SK hynix did not, and with good reason. The California district court has had no involvement with the parties' dispute in years, other than to receive periodic updates, all of which asked that court to continue the stay. Moreover, had SK hynix made the request, the California court would have asked the same questions that SK hynix refused to answer before the court in Texas: are you asking to lift the stay of the counterclaims and move forward with them; and, by what process do you suggest we proceed to address those claims? As the lower court noted, it is incredible under these circumstances for SK hynix to suggest that it would, of its own accord, ask the California district court to address its counterclaims. APPX0652. Any RAND issues will be decided, if at all, only as part of the present action in Texas. There is no overlap. There was no abuse of discretion.

**B.   No opportunity for conflict exists, as the Texas district court is the only court that will address the subject matter of the parties' dispute**

Where no overlap exists, there can be no opportunity for conflict. The California cases are concluded except in name only, and the California district court will never address or decide any issue in the future. The requisite for possible conflict is missing—there are not two pending actions in different courts that could possibly lead to any inconsistent rulings, decisions, or outcomes. The Fifth Circuit's first-to-

file rule is based on a simple common sense principle: where there is substantial overlap only one court should take and decide the cases. *See* APPX0650 (citing *In re Telebrands Corp.*, 773 F. App'x. at 602). The rule is in place to avoid duplication of effort but, most importantly, to avoid inconsistent decisions and outcomes from the different courts. *See id.* (citing *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)). Those underlying conditions for application of the first-to-file rule simply do not exist here.

The Petition incorrectly asserts that the lower court's substantial overlap and opportunity for conflict analyses were an abuse of discretion because they were not limited to the facts that existed at the time the complaint was filed in the Texas action. Pet. at 20-24. Specifically, SK hynix argues that when the Texas action was filed there were still claims asserted from the '623 Patent in *California II*, which had been deemed unpatenable but were still subject to a pending appeal. *Id.* at 18. Therefore, SK hynix argues, at the relevant time Netlist had pending patent infringement claims in the California Actions. *Id.* The argument is misplaced for two reasons.

First, in its Order, the district court's substantial overlap analysis considered the facts as presented at the time that the complaint was filed, and on those facts alone denied the motion. APPX0649 and APPX0653 (stating that its analysis is based on the scenario where the final written decision on the '623 claims had issued

but was subject to a pending appeal). So, SK hynix is assigning error to something the lower court simply did not do. While it is true that the noticed appeal was later dismissed in July of 2020, the district court's decision and Order did not address or rely upon that fact. Rather, it addressed solely the facts as they existed at the time the Texas action was filed, and determined that no substantial overlap or opportunity for conflict existed.

Second, even if it were otherwise, the argument imprudently exalts form over substance. The hyper-technical application of that legal principle is unjustified and would produce an absurd result. *See, e.g.*, *Global Equity Management (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 U.S. Dist. LEXIS 9971, at *25-26 (E.D. Tex. Jan. 24, 2017) (stating that the first to file rule "should also not be applied rigidly"), *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("exceptions to the first-to-file rule may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'"). The irrefutable fact is that the appeal from the '623 patent final written decision was dismissed, after which the California district court no longer had subject matter jurisdiction over *any* of Netlist's claims, and thus had no ability to address or decide anything with respect to those claims. Again, under the Fifth Circuit's well established test, the first-to-file rule should only apply where a likelihood exists that there will be a wasteful duplication of effort between two sister

courts and create the possibility of inconsistent decisions and outcomes. *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 603-04 (5th Cir. 1999). No such possibility exists here.

The district court appropriately determined that even while the final written decision concerning the '623 patent claims was subject to a right of appeal, there was no real risk of duplication of effort or inconsistent decisions. *See In re Telebrands Corp.*, 824 F.3d 982, WL 11588057, at *2 (Fed. Cir. 2016) (the Federal Circuit "does not reverse non-transfer decisions just for *some* risk of duplication") (emphasis added). After the appeal was dismissed, no risk existed for duplication or disparate outcomes. As here, where only one court will hear and decide the parties' claims and counterclaims, there is no need or possible justification for transfer under the first-to-file rule.

## C.   The district court properly identified advantages to trying the case in Texas

It was not an abuse of discretion for the district court to recognize that the CDCA has had no active involvement in the parties' dispute for several years. APPX0659-660. In fact, Netlist's lead counsel has never spoken with the CDCA judge, nor has he appeared in her courtroom, on these matters. APPX0987 at 20:3-9. That is true now, it was true when the Texas action began, and it was true when the transfer motion was first filed. The Petition's criticism of the delay in deciding the motion is therefore irrelevant. Here, again, the district court's analysis relies

correctly upon undisputed facts and common sense principles. The simple reality is that the Texas district court is, and has been, actively engaged in the dispute, and proceeding in the WDTX is the most efficient and effective use of judicial resources.

## IV.    Transfer Is Not Warranted Under 28 U.S.C. §1404(a)

The district court carefully considered SK hynix's section 1404(a) convenience argument, and properly exercised its discretion in denying the transfer motion. Because there is far more than plausible support in the record for this result, there is no basis for this Court to second guess the lower court's measured conclusion in this regard. *In re Intel Corporation*, Case No. 2021-0111, slip op. at 5 (Fed. Cir. Jan. 21, 2021) (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010)).

### A.    This Case Could Not Have Been Filed in CDCA, Ending the Analysis

Under Fifth Circuit precedent, the threshold inquiry is whether the case could have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004); 28 U.S.C. §1404(a). Only if the case could have been brought in the proposed transferee forum does the district court exercise its discretion in determining whether transfer is proper by weighing various private and public interest factors. *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). The district court properly found that this threshold requirement was not met because Netlist could *not* have filed the case in CDCA. APPX0656-

657. As already discussed, under the patent venue rules Netlist could not have filed the WDTX actions in CDCA under *TC Heartland*, which requires that each defendant have a regular and established place of business in the subject venue. The district court did not abuse its discretion in drawing this conclusion. *See id*. The section 1404(a) inquiry should end there.

Notwithstanding, SK hynix contends that the "this case 'might have been brought' in CDCA." Pet. at 28. The district court correctly noted that SK hynix failed to cite any persuasive authority in support of this contention. APPX0656. It does no better here: in *Leach v. Day To Day Imports, Inc.*, No. 2:17-07351, ECF No. 50 at 4 & n.1 (C.D. Cal. Nov. 14, 2017), both actions involved the *same* patent, and the plaintiff conceded that the issues in both actions were substantially similar. *Leach v. Day To Day Imports, Inc.*, No. 2:17-07351, ECF No. 50 at 6 (C.D. Cal. Nov. 14, 2017). Here, not only is there no substantial overlap, there is no overlap at all. The circumstance in *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *11 (W.D. Tex. Apr. 5, 2017), is equally unavailing. That case involved an enforceable forum selection clause and, even if that were not itself dispositive, the district court determined that judicial efficiency leant towards transfer because the original forum *had already held a jury trial*. *Id.* at *16. Nothing like those circumstances is present here. The district court correctly found that Netlist could not have brought the present case in the CDCA.

**B.**     **The Private Interest Factors Do Not Demonstrate That CDCA Is A "Clearly More Convenient" Forum**

Beyond the dispositive threshold inquiry, the district court went on to properly find in its measured discretion, after weighing the evidence, that the private and public interest factors of the section 1404(a) analysis do not support the conclusion that CDCA is a "*clearly* more convenient" forum. There was no abuse of discretion in the lower court's assessment of any of the relevant convenience factors.

**1.**     **Private Factor One: The district court properly found that "Access to sources of evidence" does not weigh in favor of transfer**

As to the first private factor, the district court correctly concluded that the relative ease of access to sources of proof does not suggest, let alone demonstrate, that CDCA is a "clearly more convenient" forum than WDTX. Apart from the fact that modern patent litigation does not involve file boxes of physical documents,[5] "the bulk of the relevant evidence [in such cases] usually comes from the defendant," and "the place where the defendant's documents are kept weighs in favor of transfer to that location." APPX0657. Here, that location is South Korea. In considering the

---

[5] As Judge Albright rightly noted in another recent case, this factor does not comport with modern patent litigation. *Parkervision, Inc. v. Intel Corp*., No. 6:20-cv-00108-ADA, 2021 U.S. Dist. LEXIS 24588, at *9 n.1 (W.D. Tex. Jan. 26, 2021) (ease of access factor "is at odds with the realities of modern patent litigation"). This case proves the point. The parties exchanged millions of pages of documents in the prior ITC litigation (all of which is available for use in WDTX through the parties' cross-use stipulation), yet not a single document was produced in hard copy form.

relative volume of SK hynix's documents as between its offices in South Korea, in Texas, and in northern California, the district court reasonably concluded that SK hynix's South Korean headquarters is where the overwhelming majority—if not all—of the relevant evidence resides. APPX0657-658.

The district court took the additional step—which SK hynix incorrectly accuses it of skipping—of comparing the existence of potentially relevant evidence between SK hynix's WDTX and NDCA offices, and reasonably concluded that it is equally likely that documents reside in either WDTX, or in NDCA. APPX0657. SK hynix points to no fact in the record that suggests any relevant evidence resides in SK hynix's NDCA offices. Pet at 30. That is because there is no such evidence.

SK hynix next suggests that the location of *Netlist's* documents weighs in favor of transfer. Pet. at 31. This argument is unpersuasive, even with its reliance on the inapt *Acer* case. *Id.* (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1254-1255 (Fed. Cir. 2010)). In that case, the transfer forum was more convenient because some of plaintiff's and the *majority of defendants'* documents likely resided in the forum. Unlike *Acer*, none of SK hynix's documents are located in the transfer forum—and SK hynix makes no argument to the contrary. APPX0657; Pet. at 30-32.

Finally, SK hynix points to the fact that some sources of proof have already been produced in California. Pet. at 30. This further ignores the reality of the parties' dispute. The 4.2 million pages of documents exchanged between the parties in the

prior ITC cases were all produced digitally. APPX0859. And to the extent SK hynix

alleges that documents were "produced" in the CDCA cases as a result of the parties'

cross-use agreement, those documents have also and already been "produced" in

WDTX under the same logic. APPX0960-967 at ¶ 9.

On this factor, the district court reached exactly the right conclusion: CDCA

is not a "clearly more convenient" forum than WDTX. Because there was far more

in the record than mere "plausible support" for this conclusion, no abuse of

discretion occurred. *In re Intel Corporation*, Case No. 2021-0111, slip op. at 5 (Fed.

Cir. Jan. 21, 2021) (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir.

2010)).

### 2. Private Factor Two: The district court did not abuse its discretion in finding that the "availability of compulsory process" does not weigh in favor of transfer

Over the course of two prior ITC investigations between Netlist and SK hynix,

no issue arose with compulsory process, and no party should reasonably expect there

to be one now. Despite this uncontested fact, SK hynix identifies a handful of Netlist-

related witnesses residing in California, and argues it is important that they might be

subject to subpoena power in CDCA. Pet. At 32. The district court was warranted in

finding the argument unpersuasive. APPX0658. All of the witnesses SK hynix

identifies have willingly participated in prior litigation. For example, in connection

with the prior ITC investigations, Dr. Hyun Lee, a named inventor, and Noel Whitley

were deposed for a total of six days. *E.g.*, APPX0872; APPX0994-995. They did this on behalf of Netlist and in their personal capacity. *E.g.*, APPX0911-918. Dr. Lee was never asked to attend 0either ITC hearing by SK hynix; Mr. Whitley twice traveled from California to Washington D.C. to participate in both ITC hearings without issue. APPX0994-995. And Netlist's prosecution counsel lives in the Northern—not Central—District of California. APPX0183. SK hynix previously deposed her in the Northern District without issue, and SK hynix never sought her attendance at either ITC trial. SK hynix does not contest any of this, nor could it. Weighing all of this, the district court reached the measured and appropriate conclusion that compulsory process does not favor CDCA.

SK hynix also notes that witnesses for the suppliers of the chips containing accused functionality reside in California and are potentially subject to the subpoena power of CDCA. Pet. at 32.[6] As with the Netlist-related witnesses, all of the chip supplier witnesses participated in each prior ITC investigation without issue—and, in fact, neither Netlist nor SK hynix sought the attendance of any third party component supplier as a witness in the ITC. No past, present, or speculative compulsory process issue exists for any witness, and SK hynix does not even attempt to identify one. Pet. at 32-34. In other words, SK hynix provided no fact upon which the district court could even exercise, much less abuse, its discretion.

---

[6] SK hynix did not make this argument below. APPX0090.

At best for SK hynix, it has identified witnesses that might be subject to subpoena power in CDCA, but failed to articulate or show why the subpoena power might be needed. Yet, SK hynix argues it was improper for the district court to point this out. Pet at 33. Relying on a footnote in an unpublished opinion, SK hynix suggests that if there is no indication that a witness is willing to attend trial, that witness should be deemed *unwilling*. Pet at 34 (citing *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). Even if the district court had not plausibly relied on the fact that all witnesses previously participated in the ITC litigations without issue as a reasonable indication of their future willingness, APPX0994-995, the outcome would be no different.

Fifth Circuit courts require that the party seeking transfer demonstrate that a witness actually would be unwilling to appear at trial—not rely on mere innuendo that they might be unwilling. *See, e.g.*, *Casey v. Reliance Tr. Co.*, No. 4:18-CV-00424, 2018 U.S. Dist. LEXIS 219439, at *9 (E.D. Tex. Dec. 12, 2018) ("Defendant bears the burden to demonstrate and identify *unwilling* third-party witnesses that would benefit from the transfer.") (emphasis added). This Court has endorsed similar approaches. *See, e.g.*, *In re Barnes & Noble, Inc*., 743 F.3d 1381, 1383 (Fed. Cir. 2014) (no error in imposing the burden on the movant to show that third-party witnesses would be unable or unwilling to travel); *see also In re Apple, Inc*., 581 F. App'x 886, 891-892 and n.1 (Fed. Cir. 2014) (Bryson, dissenting) (collecting cases

standing for proposition that burden is on the party seeking transfer to show that the third party witnesses would be unwilling to travel to the transferor district). Here, SK hynix made no attempt to show that any potential witness is actually unwilling to appear at trial.

It was appropriate, therefore, for the lower court to attach little weight to the compulsory process factor. APPX0658 (citing *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) ("When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor.") (citation omitted)). There was no abuse of discretion on this factor.

### 3.    Private Factor Three: The district court did not abuse its discretion in concluding that "witness convenience" does not weigh in favor of transfer

The relative convenience to key witnesses is accorded greater weight in the venue transfer analysis than non-key witnesses. *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762-763 (S.D. Tex. 2009). Here, the district court carefully considered evidence and reasonably concluded that (1) all of SK hynix's likely trial witnesses reside in South Korea, (2) no key third-party trial witnesses have been identified, and (3) Netlist's likely trial witnesses are willing to travel to WDTX. APPX0659. In view of these uncontested facts, it cannot be said that the district court abused its discretion in concluding that this factor was neutral.

Concerning SK hynix's witnesses, the lower court reasonably determined that it was no more burdensome or inconvenient to travel from South Korea to WDTX than it would be for those witnesses to travel from South Korea to CDCA. APPX0659. Notably, SK hynix does not challenge this reasoning. Pet at 34-36. Instead, SK hynix only argues that the district court failed to rigidly apply the "100 mile rule" and thus abused its discretion. Pet at 35-36. Not so. That rule is not to be rigidly applied where, as here, witnesses will be travelling a significant distance regardless of venue. *See, e.g.*, *Smartflash LLC v. Apple, Inc*., No. 6:13-cv-447, 2014 U.S. Dist. LEXIS 185268, at *23 (E.D. Tex. Apr. 4, 2014) (when a witness will be required to travel "a significant distance no matter where they testify," that witness is discounted for purposes of the "100 mile rule" analysis) (internal citations omitted); *see also In re Genentech, Inc*., 566 F.3d 1338, 1344 (Fed. Cir. 2009) (declining to give significant weight to the alleged inconvenience of international witness).

Where all of SK hynix's witnesses will be travelling from South Korea to testify in this case, whether in CDCA or in WDTX, the "100 mile rule" is inapplicable. Consequently, the district court did not abuse its discretion in concluding that witness convenience is neutral.

### 4. Private Factor Four: The district court did not abuse its discretion in finding that "practical problems" and "judicial economy" do not weigh in favor of transfer

Here, SK Hynix merely renews its argument that CDCA is more convenient because a substantial overlap exists. Pet. at 36-37. As already discussed, the argument is unpersuasive for the reasons stated in the district court's well-reasoned and supported first-to-file assessment. APPX0651-654. There is no overlap, and by SK hynix's own admission the dispute was never meaningfully litigated in the CDCA. Accordingly, the district court did not abuse its discretion in concluding this factor weighed against transfer. APPX0659-660.

## C. The Public Interest Factors Do Not Demonstrate That CDCA Is A "Clearly More Convenient" Forum

### 1. Public Factor One: The "local interest" factor does not weigh in favor of transfer

The parties briefing below amply demonstrated that the WDTX is a significant commercial center and focal point for the relevant memory market, and particularly the implementation of the accused products, and for that reason, is an intersection of the both SK hynix's and Netlist's engagement with the market. In contrast, SK hynix concedes that it has no presence in CDCA. APPX0651 at n.1. Netlist has demonstrated a vested interest in commercializing its patented technology within the WDTX, including a significant investment of time and effort in developing and maintaining memory module customers there. APPX0688-689.

Similarly, SK hynix has a dedicated office in WDTX for sales and technical support of its largest customer directly relating to the accused RDIMM and LRDIMM products. APPX0920-931; APPX1001-1002. Personnel in SK hynix's Austin office provide "extensive testing, certification, and qualification of the accused LRDIMM and RDIMM memory modules for specific use" in the products of one of SK hynix's largest American customers resident in WDTX. *Id.*; APPX0943-944. The district court was amply justified in exercising its discretion to conclude that WDTX is an intersection both of the parties' mutual interest, and of relevant facts and circumstances that gave rise to this suit, as well as the location of possible third-party discovery. APPX0660-661.

The present circumstances are distinguishable from those in *In re Apple* where, unlike here, the district court erred by relying on Apple's "general presence in WDTX" and "state and local tax benefits." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. Nov. 20, 2020), *see also Dataquill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410, at *14-15 (W.D. Tex. June 13, 2014) (noting that the mere sales of accused products to Austin public consumers do not establish a localized interest). Here, the lower court had ample support—not just plausible support—in the record underlying its finding that SK hynix's connection to the district is much more than just selling products. SK hynix's full-time Austin employees work to optimize the accused products for its largest US customer,

located within the WDTX. APPX0943-944; APPX0920-931. There was no abuse of discretion in the lower court's finding that the local interest factor weighed against transfer.

### 2. Public Factor Two: The district court also did not abuse its discretion in holding that "court congestion" does not weigh in favor of transfer

The lower court correctly determined that court congestion and administrative difficulties do not favor transfer in this case because the CDCA has, at best for Petitioners, a similar time to trial. APPX0660-661. This factor is relevant only to the extent that there is "an appreciable difference in docket congestion between the two forums," looking at the comparative "speed with which a case can come to trial and be resolved[.]" *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Even before the district court moved up the WDTX trial date, it has set most, if not all, patent cases for trial within approximately 18 months after filing. *See, e.g.*, *EROAD Ltd. v. PerDiemCo LLC*, No. 6:19-CV-00026-ADA (W.D. Tex. Sept. 19, 2019). As a result, a likely time to trial is 22.5 months or earlier. The CDCA's similar time to trial of 22.3 months. As the lower court correctly concluded, that comparison of average speed to trial does not favor transfer. APPX0660. Notably, SK hynix argued below that this factor was neutral. APPX0092 at n.13. There was no abuse of discretion in the district court's conclusion on this factor.

31

### 3. Public Factor Three: The "familiarity of the forum with the governing law" is irrelevant

This factor was not material to the lower court's decision and is not relevant to the Petition.

## CONCLUSION

For all of the foregoing reasons, Netlist respectfully submits that Petitioners have failed to demonstrate that any aspect of the district court's measured assessment of the factual record before it, and careful exercise of discretion in view of that record, lacked any plausible support. There is therefore no basis for this Court to second guess the lower court's conclusion to deny Petitioners' motion to transfer the case to a different district. This Court should deny the Petition.

Dated: February 16, 2021                    Respectfully submitted,

*/s/ Andrew H. DeVoogd*
James M. Wodarski
Andrew H. DeVoogd
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: 617.542.6000

*Attorneys for Respondent Netlist, Inc.*

## CERTIFICATE OF SERVICE

I, Svetlana Santos, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **February 16, 2021** Appellant electronically filed the foregoing **RESPONSE TO PETITION FOR MANDAMUS WITH SUPPLEMENTAL APPENDIX IN SUPPORT** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users, including the following principal counsel for the other parties.

Carter G. Philips
Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005

Kenneth L. Nissly
LAW OFFICES OF KENNETH L. NISSLY
P.O. Box 3462
Saratoga, CA 95070

Paper Copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will filed with the Court, via Federal Express, within the time provided in the Court's rules.

Dated: February 16, 2021                    /s/ Svetlana Santos
                                            Mintz Levin

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e)

 X    The brief contains **7,782** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

 _    The brief uses a monospaced typeface and contains __ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

 X    The brief has been prepared in a proportionally spaced typeface using MS Word 2016 in a 14 point Times New Roman font or

 _    The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


Date: February 16, 2021                  */s/ Andrew H. DeVoogd*
                                         Andrew H. DeVoogd
                                          MINTZ, LEVIN, COHN, FERRIS,
                                         GLOVSKY, AND POPEO, P.C.
                                         *Attorneys for Respondent Netlist, Inc.*